# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

JANET THOMAS,   Case No. 06-10607-RGM
                (Chapter 13)

    Debtor.

## MEMORANDUM OPINION

THIS CASE is before the court on the motion for relief from stay filed by Wells Fargo Bank, the responses filed by the debtor and the trustee, and the draft consent order submitted by the parties. The draft order cannot be entered without a hearing because the terms may unnecessarily adversely affect the rights of unsecured creditors.

The court must be concerned, not only with the rights of Wells Fargo which holds a claim secured by the debtor's home, but also all unsecured creditors in this case. It is well-known that one of the strongest motivating forces for debtors in chapter 13 is to save the family home. If the family home is lost, the case is most frequently dismissed or converted. This has a practical impact on unsecured creditors: If the debtor is successful in curing the arrearage on the family home, it is more likely that unsecured creditors will also receive a distribution. If the debtor loses his home, the unsecured creditors generally lose any opportunity to receive a distribution in the case.

The court recognizes that the attorney for each party is zealously representing his client's best interests. Those interests, however, are frequently at odds with the best interests of the unsecured creditors. It is not surprising that a secured creditor endeavors to obtain as much protection as possible. Nor is it surprising that the debtor is usually very sensitive to the pressure asserted by the secured creditor. This interplay leaves the unsecured creditors in a precarious

position. The purpose of chapter 13 is to enable a debtor to reorganize his financial affairs. It would be nice if the filing of the petition operated as a magic wand and changed the debtor's red ink to black ink and the circumstances that caused his financial distress to circumstances that ensure financial success. That is simply not the case. The transformation, if it happens, takes time and effort. The first steps are necessarily tentative and, in many case, not entirely successful. However, with effort the objective can frequently be achieved.

The court needs to balance the competing interests of the secured creditor, the debtor and the unsecured creditors. It needs to protect the secured creditor while preserving the debtor's ability to restructure his financial affairs, an endeavor which if successful, enures to the benefit of the secured and unsecured creditors. In an effort to balance these interests and at the same time do so efficiently and effectively within the confines of a chapter 13 case, the court developed terms that the court will generally approve in consent relief from stay orders relating to real estate. They are not mandatory. Terms at variance with them will be approved, if appropriate. However, ordinarily, consent orders that embody the suggested terms will be approved without further hearing. Additional or different terms may require a further hearing to develop the factual basis for them and to consider them in light of all of the parties to the chapter 13 case, not just the immediate parties to the consent order.

The first thing that needs to be addressed in an order is the post-petition payments due under the note secured by the deed of trust. While there are many ways that this can be addressed, the most popular is to require the debtor to make future payments timely and to cure delinquent post-petition payments, typically in equal payments over six months. A second it to incorporate the post-petition delinquency into a modified chapter 13 plan. A third is to provide a date certain which is usually done in connection with a sale or refinance of the property. The parties have broad

discretion to create appropriate payment terms. The principal issue is feasibility. The court requires that the cure payments be reasonable and payment feasible.

The second item to be addressed is the default provision. Here, because of the circumstances of most cases, the court established a cure process in the event of a default. Simply put, it requires a default notice and an opportunity to cure. If no cure is made within the cure period, the secured creditor may submit its certification and a draft order terminating the automatic stay. The order will generally be entered without a further hearing. This mechanism is the heart of the order. It addresses the problem that a debtor's initial steps may not be adequate to immediately solve his financial problems while not prematurely preventing reasonable efforts to succeed. Success, of course, benefits everyone. The secured creditor is paid and avoids a foreclosure. The unsecured creditors receive a distribution, many times, a full or nearly full distribution. At the same time, it protects the secured creditor by providing a simple and expedited mechanism to terminate the stay and proceed to foreclosure.

The court's approach is not appropriate in every case. The court relies on the parties to identify those cases where it is not appropriate so that they may be addressed directly. However, if the parties announce that the matter is settled and that an order will be submitted, the court assumes that the case is not out of the ordinary and that the consent order will contain these terms.

There are terms that the court will not generally approve absent a reason making them appropriate. The draft order submitted by the parties in this case contains several. First, the draft order grants relief from the automatic stay but then immediately stays that grant provided that the debtor take certain actions. The court is not satisfied with this language. The court wants there to be no confusion about the status of the automatic stay. It remains in full force and effect. No action

to proceed to foreclose is permissible. The court's provisions modify the automatic stay to impose explicit requirements upon the debtor and provide an expedited manner in which the secured creditor may obtain relief from the stay in the event that the debtor does not comply. The automatic stay remains in full force and effect unless and until a second order is entered by this court terminating the stay. The language in the proposed order creates, at best, ambiguity and, at worse, an end-run around the court's intended process.

The proposed order contains a boilerplate provision that if the holder of any other deed of trust secured by the property obtains relief from the automatic stay then the movant will automatically be granted relief from the automatic stay. The court will not ordinarily approve such a provision. First of all, the court is not aware of whether there is another deed of trust secured by the property and will not insert this provision as a boilerplate provision in every relief from stay order just in case there is one. Second, if there is another deed of trust, it is not known whether the other deed of trust has priority over the deed of trust in this motion or is subordinate to it. This is significant to the court. Finally, while default on another deed of trust may be a harbinger of things to come, the court is unwilling in the ordinary case to automatically assume the worst and grant relief without further information.

The draft order contains a provision waiving notice of default on a second or subsequent default under the order. The court ordinarily does not approve any waiver of notice of default. The expedited process in the order is adequate in most cases.

The draft order provides that the stay is automatically terminated if the case is converted to a case under any other chapter. The court is unwilling to include this provision in the ordinary course. The court cannot predict if a case will be converted, and if so, why or to what chapter. It

makes a difference whether it is converted to a chapter 7 or 11. While the provision does not propose that the automatic stay is terminated as to a subsequently appointed chapter 7 trustee, the court can see no reason to terminate the stay as to the debtor merely because the case is converted to a proceeding under chapter 7. Part of the problem is that such language is almost always overly broad. In many cases, such language could be construed to terminate the automatic stay in its entirety as to the debtor which could permit the creditor to file suit against the debtor during the pendency of the plan. That could have an adverse effect on the success of the plan detrimentally of all other creditors.

Draft orders frequently seek waiver of the ten-day stay imposed by Fed.R.Bankr.P. 4001(a)(3). As a practical matter, the creditor is not likely to have sufficient alacrity to take any action within the ten-day period, but the court will not waive it as a matter of routine. The rule was promulgated for good reason. While it may be waived, routine waiver of the rule is nothing more than repealing the rule. To remain faithful to the rule, it should only be waived when there is a good reason to waive it.

If there is a co-debtor and a co-debtor stay under §1301(a), the relief granted as to the co-debtor is normally the same as granted as to the debtor.

The court prefers a provision modifying the automatic stay permitting the mortgage company to mail the debtor payment coupons, payment changes, notices of late payment, monthly statements, and any other statement or notice, other than a notice of acceleration, normally sent to mortgagors in the ordinary course of business. The purpose is to make sure that communications between the debtor and the mortgage company are not hampered by the bankruptcy. Many debtor's rightly complain that they do not know that the mortgage company thinks that the debtor is in default

because they receive no mail from the mortgage company. This provision is intended to reduce problems arising from the lack of communications and reduce mortgage company's expenses by allowing them to communicate routine business matters directly to the debtor and avoid the mortgage company's attorney which only adds expense and time.

Finally, the court limits the effect of the order to one year after the date of entry of the order. Circumstances change in a chapter 13 case. Most relief from stay motions are filed early in the case. If a debtor survives the first year, the likelihood of the debtor successfully completing his plan improves substantially. That does not mean, however, that there will not be unanticipated difficulties in the later years of the plan. Because the circumstances are likely to have materially changed between the later years of the plan and the first year of the plan, the court is unwilling to extend the modification order beyond a one-year period. Additional review should be made if there is a later default.

Some draft orders contain additional provisions. As long as they do not seek to circumvent the core purposes of the routine provisions, they are generally acceptable. For example, the draft order provides an address for payments. This is helpful. It reduces the uncertainty of where payments are to be mailed. Some creditors prefer that the cure payments be made to counsel, others direct to the creditor. There should be no mistake as to where payments are to be mailed.

One note of caution. While these provisions have worked well over the last few years, the real estate market is changing. If the change alters the risk analysis and the protection appropriate to the various parties, these terms must change as well.

    Alexandria, Virginia
    January 22, 2007

                                              /s/ Robert G. Mayer
                                              Robert G. Mayer
                                              United States Bankruptcy Judge

Copy electronically to:

Howard N. Bierman
Nathan A. Fisher
Gerald M. O'Donnell

13359